UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KRISPY KRUNCHY FOODS, L.L.C.,

*Plaintiff,*

versus

AMA DISCOUNT, INC. D/B/A CHEF
DISCOUNT MARKET; ALI M. ALLAN;
AND MOHAMMED ALLAN,

*Defendants.*

Civil No. 15-590

Section:

District Judge:

Division:

Magistrate Judge:

## COMPLAINT

**Krispy Krunchy Foods, L.L.C.** ("**KKF**") makes the following allegations of law and fact to support its *Complaint*:

### NATURE OF THE CASE

1.    The defendants have ignored months of demands to stop using KKF's federally-registered trademark and protected trade dress at their convenience store on Chef Menteur Highway.

2.    **Injunction; destruction.** The Court should permanently enjoin the defendants from using KKF's marks and dress. 15 U.S.C. § 1116. The Court should also order the defendants to destroy the misused materials. 15 U.S.C. § 1118.

3.    **Counterfeiting.** The defendants are "holdover licensees" who <u>counterfeit</u> KKF's marks, behavior which <u>requires</u> the Court to award KKF treble KKF's actual damages or the defendants' profits, whichever is higher, with attorney's fees. 15 U.S.C. § 1117(b).

4.   If KKF makes the election, the Court must award statutory damages in lieu of treble damages for defendants' "holdover licensee" counterfeiting. 15 U.S.C. § 1117(c), with mandatory awards up to $200,000 per mark, or $2,000,000 if the Court finds that the counterfeiting was willful. 15 U.S.C. § 1117(a).

5.   **Trademark and dress infringement; unfair competition.** As holdover licensees, the defendants are also <u>presumed infringers</u> of KKF's registered marks and dress. The Court may award KKF up to treble KKF's damages, defendants' profits, the costs of these proceedings, and attorney's fees. 15 U.S.C. § 1117(a). These awards are also appropriate because the defendants falsely designate the origin of the food they sell. *Id.*

### PLAINTIFF

6.   KKF is a limited liability company organized under Louisiana law. Its principal place of business is 1615 Harris Street in Alexandria, Louisiana.

### DEFENDANTS

7.   **AMA Discount, Inc. ("AMA")** is a business incorporated under Louisiana law. AMA's principal place of business is at 10833 Chef Menteur Highway in New Orleans, Louisiana. It does business under "Chef Discount Market", a trade name it registered in Louisiana.

8.   **Ali M. Allan ("Ali Allan")** is a natural person of the full age of majority who resides in this judicial district. He is a director of AMA, he acts as AMA's registered agent, and he also owns the land and building where Chef Discount Market does business.

9.  **Mohammed Allan** (**"Mohammed Allan"**) is a natural person of the full age of majority who resides in this judicial district. He is a director of AMA.

10. Ali Allan and Mohammed Allan will be referenced together as the "Allan defendants".

11. The Allan defendants and AMA d/b/a Chef Discount Market will be referred to in the collective as "Chef Discount".

## SUBJECT MATTER JURISDICTION

12. This Court has original, concurrent, and supplemental jurisdiction over KKF's claims under:

   a.   28 U.S.C. § 1331, which authorizes district courts to hear civil actions arising under Acts of Congress, such as the Lanham Act, 15 U.S.C. § 1051, *et seq.*;

   b.   28 U.S.C. § 1338(a) and 15 U.S.C. § 1121(a), which authorize district courts to hear civil actions arising under Acts of Congress related to trademarks;

   c.   28 U.S.C. § 1338(b), which authorizes district courts to hear state law unfair competition claims when joined with a substantial and related claim under U.S. trademark laws; and

   d.   28 U.S.C. § 1367(a), which empowers a district court with supplemental jurisdiction over all other actions so related to the actions subject to this Court's jurisdiction under (a) – (c), above, that they form part of the same case or controversy under Article III of the United States Constitution.

## PERSONAL JURISDICTION

13. The Court may exercise personal jurisdiction over the defendants because each engages in business activities in and directed at this judicial district, and because the defendants knowingly committed tortious acts against juridical persons (KKF), acts which caused harm within this judicial district.

## VENUE

14.   Venue is proper in the Eastern District of Louisiana under:

a.   28 U.S.C. § 1391(b)(1), because all defendants reside in Louisiana and in this judicial district; and/or

b.   28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions establishing KKF's claims occurred in this district; or

alternatively:

c.   this is a district where the defendants are subject to this Court's exercise of personal jurisdiction as to KKF's claims. 28 U.S.C. § 1391(b)(3).

## KKF CHICKEN

15.   Established in 1993, KKF provides products for hot food programs at convenience stores ("C-Stores"), quick-service restaurants ("QSRs") and supermarkets.

16.   KKF's principals boast over 75 years of experience in the C-Store/food service industry; they've expanded their brand to include over 1700 locations in 35 states, a number which grows by the month.

17.   KKF is best known for its chicken ("Krispy Krunchy Chicken").

18.   KKF holds Krispy Krunchy Chicken out to the industry and its customers as a "proprietary processed bird."

19.   Although some competitors claim a proprietary breading or seasoning. KKF has distinguished itself by offering the only C-Store chicken program with a proprietary *chicken process*.

20.   KKF's is the only needle-injected, pre-marinated chicken available for QSR (e.g. Popeye's) use. This process results in the distinctive flavor for which KKF is known.

4

21.     KKF's proprietary process not only results in better-tasting chicken, it also extends pre-cooked shelf life by around 50%. The C-Store food industry knows this as Extended Shelf Life (ESL).

22.     KKF owes much of its consistency to Tyson, which is its exclusive chicken processor. Tyson processes about 600,000 pounds of chicken per week for KKF.

23.     KKF's requirements account for ~1% of Tyson's entire food service chicken output.

### THE BARN AND SUN AND ASSOCIATED TRADE DRESS

24.     Early on, KKF used its "Barn and Sun" logo to sell chicken and related food products to vendors in Louisiana and the surrounding states.

25.     Around 2006, KKF expanded its marketing footprint beyond the region.

26.     This marketing effort, the popularity of KKF's chicken, and its logo's distinctiveness were important factors in KKF's decision to apply for federal protection of the Barn and Sun.

27.     On May 5, 2010, KKF applied for inclusion of its Barn and Sun as a trademark/service mark on the Principal Register of the United States Patent and Trademark Office ("USPTO").

28.     KKF's trademark application was published for opposition on June 21, 2011.

29.     There were no oppositions and USPTO issued KKF a certificate of registration on September 6, 2011.[1]

30.     Since 1993, KKF has continuously used the trademarked Barn and Sun to identify its food products and to distinguish them from those processed and sold by others.

---

[1] **Exhibit 1** – *USPTO Registration Certificate*

5

KKF has accomplished this by prominently displaying the now-trademarked Barn and Sun on food packaging, letterheads, bills, direct mail advertising, telephone directory advertising, internet marketing and websites, and in periodicals distributed throughout the United States.

31.   The Barn and Sun[2] is reproduced below:



32.   Every package of Tyson chicken marked with KKF's trademark guarantees the quality of KKF's proprietarily-prepared products.

33.   KKF is active in The Association for Convenience and Fuel Retailing ("NACS", formerly National Association of Convenience Stores) and is an exhibitor in their annual convention. KKF is often highlighted for its role in industry changes in QSR programs for use by C-Stores. KKF has been mentioned by Convenience Store Petroleum, a leading C-Store industry publication, no less than 40 times in the last 4 years.

---

[2] **Exhibit 2 –** *May 5, 2010 Drawing re: Serial No. 85030446*

**THE PROGRAM**

34.     The "KKF Program" allows C-store "operators" to market and sell KKF food prod-

ucts using KKF's C-Store trade dress scheme – a scheme which centers on the Barn

and Sun logo.

35.     An image[3] of a typical KKF display is reproduced below:



36.     KKF-approved displays feature multiple instances of the Barn and Sun and the "Hot

and Fresh Till Late" and "Honey Butter Biscuits" which KKF developed for C-Store

use.

---

[3] **Exhibit 3** – *Specimen on file in USPTO registry*

37.   Under the KKF Program, C-Store operators agree to buy and use KKF proprietary items and refrain from co-mingling them with related food items not produced or approved by KKF.[4]

38.   Program noncompliance is typically attributable to the price of KKF's chicken. Because KKF needle marinates small, young chickens at the Tyson chicken plant, KKF's chicken costs about $0.35/lb. more than competitors' generic, saline-injected chicken.

39.   KKF's experience is that operators who change to the cheaper product, thinking they will save money, lose volume . . . and that loss is usually significant.

40.   The terms in KKF's *Operator Letter of Understanding* don't oblige operators to participate in the KKF Program for any set length of time – but they require operators to sell only certain products and not sell others while they display KKF's registered trademark and protected trade dress.

41.   KKF warns and rehabilitates noncompliant operators, often spending its own time and money to retrain the operator back into compliance.

42.   If the operator discontinues participating in the KKF Program, or if the operator refuses to fully comply with KKF's standards even after warning or retraining, the operator is sent a "debranding" letter reminding them of their duty to remove KKF marketing content from its store.

43.   If the debranding letter fails, KKF's attorneys send the former operator a letter warning them of the consequences if they fail to remove the KKF marks and dress. This

---

[4] **Exhibit 4** – *Krispy Krunchy Foods, LLC Operator Letter of Understanding.*

letter usually specifies a time frame in which the former operator must act or contact KKF's attorney to ensure that the infringing marks and dress are removed.

## CHEF DISCOUNT AND KRISPY KRUNCHY CHICKEN

44. Through the corporation listed in ¶ 7, the Amman defendants operate a C-Store called Chef Discount Market at 10833 Chef Menteur Highway in New Orleans.

45. On May 21, 2012, the Amman defendants agreed that Chef Discount Market would participate in the KKF Program.

46. Since then, Chef Discount Market has displayed the KKF Program trade dress, including a variety of Barn and Sun graphics.

47. A typical KKF Program service station displays KKF's menu and the Barn and Sun advertisements.

48. A menu board advertises KKF products, including Krispy Krunchy Chicken, at Chef Discount Market.

49. Chicken is available for sale at Chef Discount Market at 10:30 a.m. every day.

50. Chef Discount Market's compliance with the KKF Program was sporadic.

51. KKF cited Chef Discount Market for serious noncompliance in October 2013.

52. Over the next year, Chef Discount continued its non-compliance and eventually stopped purchasing KKF products altogether.

53. On September 16, 2014, a KKF trainer issued a de-branding letter to Chef Discount Market.

54. The letter explained the time in which KKF would allow Chef Discount Market to remove the KKF Program materials, after which the matter would be turned over to KKF's legal counsel.

55. The letter was ignored, and KKF's trainer repeated its demand on November 25, 2014.

56. That letter also was ignored.

57. KKF staffers have made more than one in-person visit to remind Chef Discount Market to remove the KKF Program materials.

58. These requests were ignored.

59. On December 23, 2014, KKF's lawyer sent certified mail to Chef Discount Market and to both Amman defendants, demanding the removal of all KKF advertising materials and product from the store.

60. The demand letter indicated that the KKF marketing materials were KKF's intellectual property – that the Barn and Sun was trademarked.

61. The letter explained that Chef Discount's continued display would create confusion for potential consumers, many of whom would think they were buying KKF chicken and food.

62. The letter requested that Chef Discount contact KKF's counsel within 24 hours of its receipt of the letter, and to have all KKF marketing materials down within 7 days.

63. Chef Discount's only response was to contact a KKF trainer voicing its interest in participating in the KKF Program and fully complying.

64.   On January 22, 2015, KKF's lawyer again sent certified mail to Chef Discount Market and to the Amman defendants, reiterating its demand for removal of all KKF advertising materials and product from the store and declining Chef Discount's invitation to re-kindle the parties' business relationship.

65.   The letter gave Chef Discount 10 days to remove the offending materials.

66.   Chef Discount has wholly ignored KKF's requests and demands regarding KKF's intellectual property.

67.   Despite KKF's request in its December 2014 and January 2015 letters, Chef Discount has not contacted KKF or its lawyer to resolve this matter or provide any assurances it would do so.

## CHEF DISCOUNT IS STILL SELLING FOOD
## UNDER KKF'S MARKS AND DRESS

68.     On the date of filing, at just before noon, a KKF investigator purchased a chicken

meal from Chef Discount Market. The scene at Chef Discount Market as of filing is

shown below:[5]



69.     The KKF investigator ordered off a KKF menu, from a KKF kiosk advertising Honey

Butter Biscuits and KKF dipping sauce, and was served in a KKF bag, each of which

was branded with KKF's Barn and Sun trademark – the trademark KKF has repeat-

edly told Chef Discount to remove from its store.

---

[5] **Exhibit 5:** *February 24, 2015 photograph of the interior of Chef Discount Market.*

## THE EFFECT OF CHEF DISCOUNT'S BEHAVIOR

70. Chef Discount has been told to stop using KKF's intellectual property.

71. Chef Discount's unauthorized use of KKF's registered mark and protected trade dress:

    a.    is likely to cause confusion, to cause mistake, or to deceive customers and potential customers of each party, at least on some affiliation, connection or association of Chef Discount with KKF, or on the origin, sponsorship, or approval of the Chef Discount food program by KKF;

    b.    falsely designates the origin of Chef Discount's food program and the products Chef Discount sells;

    c.    enables Chef Discount to trade on and receive the benefit of the goodwill built up at great labor and expense by KKF;

    d.    allows Chef Discount to gain acceptance for their products and services on KKF's reputation and goodwill and the recognition of the Barn and Sun;

    e.    is likely to (and already has) dilute(d) (by blurring and tarnishing) the distinctive quality of the Barn and Sun;

    f.    continues to divert profits from KKF while unjustly enriching Chef Discount; and

    g.    has cost KKF considerable legal fees in enforcing its registered rights.

## COUNT ONE
## CIVIL COUNTERFEITING
## 15 U.S.C. §§ 1114(1)(a), 1116(d)(1)(B), 1127
## (LANHAM ACT §§ 32, 34, 45)

72. KKF incorporates by reference all allegations as though they were reproduced fully.

73. Chef Discount was at one point permitted by KKF to use its registered mark and dress with its food sales.

74. Chef Discount may no longer use KKF's mark and dress, but they're still doing so, even after repeated written and in-person demands to discontinue their use.

13

75.   In counterfeiting claims, courts consider businesses like Chef Discount "holdover licensees" when they continue to use marks and dress in commerce after they're no longer permitted by the mark/dress owner.

76.   Chef Discount is not merely using marks or dress similar to KKF's, they're using the exact same marks – and they refuse to stop.

**COUNT TWO**
**TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114(1)(a)**
**(LANHAM ACT § 32)**

77.   KKF incorporates by reference all allegations as though they were reproduced fully.

78.   KKF owns the Barn and Sun, which is a federally-registered, valid, and distinctive trademark.

79.   The Barn and Sun logo being used at Chef Discount is not just *similar to* or *likely to be confused with* the Barn and Sun, it is the *actual trademark* owned by KKF and used in the KKF Program. Chef Discount now sells its own, unrelated, chicken products – in the same locations and to the same people it once sold KKF's proprietary Program products.

80.   Chef Discount is no longer an authorized Barn and Sun user. Courts rule that "holdover licensees" like Chef Discount are presumptive trademark infringers.

81.   Although no "likelihood of confusion" showing is required because Chef Discount is presumptively infringing, its behavior still satisfies the Fifth Circuit's "digits of confusion" elements: (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers.

14

82. C-Store QSR programs serve food to a wide variety of mobile customers, many of whom are engaged in interstate commerce. Chef Discount does business along major traffic veins through which considerable interstate commerce passes. Since many QSR programs in C-Stores accept state and federal assistance program payments, Chef Discount's seemingly intrastate transactions have a real tendency to affect interstate commerce.

83. Chef Discount's unauthorized use of the Barn and Sun touches on every principle underlying federal infringement provisions, namely: 1) it retards KKF customers of the ability to identify the products they have grown to love; 2) it robs KKF of the considerable goodwill it has built since it first used the Barn and Sun; and 3) it results in distorted competition in the QSR and C-Store chicken marketplace.

84. Chef Discount has been repeatedly notified, by KKF's trainers, marketing agents, and attorney – that Chef Discount Market is no longer a KKF Program participant – and that KKF materials must be taken down at the store.

85. Chef Discount has been put on notice of the legal consequences of its unauthorized use of KKF's registered mark and protected trade dress.

86. Chef Discount has repeatedly ignored these requests and should be deemed to have intended to cause confusion, mistake, or deception with their willful, knowing, and bad faith violations of the Lanham Act, all of which factors into some of the Act's enhanced remedies; and qualifies this as the "exceptional case" contemplated by 11 U.S.C. § 1117(a), which permits an attorney's fees award.

## COUNT THREE
## UNFAIR COMPETITION: TRADE DRESS INFRINGEMENT,
## FALSE DESIGNATION OF ORIGIN, PALMING OFF/PASSING OFF
## 15 U.S.C. §§ 1125(a)
## (LANHAM ACT § 43(a))

87.   KKF incorporates by reference all allegations as though they were reproduced fully.

88.   Since 1993, KKF has continuously used the Barn and Sun, "Honey Butter Biscuits", and the Krispy Krunchy name to identify its food products and to distinguish them from those processed and sold by others.

89.   KKF has been prominently displaying the Barn and Sun on food packaging, letterheads, bills, direct mail advertising, telephone directory advertising, internet marketing and websites, and in periodicals, all of which have been distributed throughout the United States.

90.   The Barn and Sun, Honey Butter Biscuits, and the Krispy Krunchy name are inherently distinctive marks and KKF's use for over 20 years has given them secondary meanings to consumers in the Greater New Orleans Area, where Chef Discount still displays this dress without permission. These items represent a uniquely-flavored and prepared product and a certain consistency and freshness which consumers expect from KKF-branded and prepared foods.

91.   Chef Discount has no legitimate reason to use KKF's protected dress; the dress is nonfunctional – the dress combination is illustrative of KKF and its food products; not food products in general.

92. The association created by Chef Discount's unauthorized use is likely to cause confusion in New Orleans consumers. The hallmark of infringement, confusion is inevitable where the dress being utilized is more than merely *similar* or *confusing* – here, it is the *same dress* – it's just no longer authorized for use by Chef Discount.

93. Chef Discount's continued use of KKF's Barn and Sun and associated trade dress can only be explained as intentional and deceptive. Chef Discount's repeated refusal to respond to KKF's demands must mean it designs to fool the public into believing the food products it sells are made by, approved by, sponsored by or somehow affiliated with KKF.

94. Chef Discount's status as a C-Store in or around major thoroughfares places its activity squarely within the stream of interstate commerce contemplated by the Lanham Act.

95. That the *same* trade dress and Barn and Sun were used – and not merely dress or logos *confusingly similar* – establishes both <u>direct</u> false representation and common law attribution under § 43(a) of the Lanham Act.

96. Under the circumstances and given KKF's repeated demands to discontinue the display, Chef Discount's continued abuse of the Barn and Sun (and associated trade dress) demonstrates its willful intent to pass off, palm off, or attribute its menu items for those of KKF, defrauding the paying customer and harming KKF.

**COUNT FOUR**
**UNFAIR COMPETITION: TRADEMARK DILUTION**
**15 U.S.C. §1125(c)**
**(LANHAM ACT § 43(c))**

97. KKF incorporates by reference all allegations as though they were reproduced fully.

98.   The Barn and Sun is a strong and distinctive mark; it's been used nationwide for a long time to identify KKF food products and Program operators. The subject of meaningful advertising, the Barn and Sun is widely recognized by consumers and those in the C-Store and QSR industry.

99.   The Barn and Sun is in substantial and exclusive use by KKF and its Program participants and it is federally registered, as alleged above. KKF's Barn and Sun is recognized by the general consuming public of the United States as designation of source for KKF's goods and is therefore a famous mark. Chef Discount's acts were commenced while KKF's Barn and Sun had already become famous.

100.  Chef Discount has used the Barn and Sun as a mark or trade name with food products it has sold and transported in interstate commerce. Chef Discount's unauthorized use of the Barn and Sun creates more than just a likelihood of association with KKF – the marks are 100% identical.

101.  Chef Discount violates § 43(c) of the Lanham Act because its display of the Barn and Sun and associated trade dress is likely to cause dilution by blurring by impairing the distinctiveness of the Barn and Sun, all to the irreparable injury and damage of KKF.

102.  Chef Discount also violates § 43(c) of the Lanham Act; its display of the Barn and Sun and associated trade dress is likely to cause dilution by tarnishment by harming the reputation of the Barn and Sun, all to the irreparable injury to and damage of KKF.

103.    Having been warned multiple times and cautioned to take these materials down, Chef Discount should be deemed to have committed these acts willfully and intended to create an association between its products and the Barn and Sun. Chef Discount's refusal to cease its display betrays its willful intent to trade on the recognition of KKF's name and the Barn and Sun.

**COUNT FIVE**
**UNFAIR COMPETITION: FALSE ADVERTISING**
**15 U.S.C. § 1125(a)**
**(LANHAM ACT §43(a))**

104.    KKF incorporates by reference all allegations as though they were reproduced fully.

105.    Chef Discount's use of the Barn and Sun and associated KKF trade dress amounts to a false or misleading statement about its food program and the products it prepares and sells.

106.    This use has deceived or could deceive a substantial segment of the consumer base in and around the Chef Discount store.

107.    The deception which occurred was material and likely influenced those consumers' decisions about whether to buy Chef Discount's food program items.

108.    As a C-Store/gas station near major thoroughfares with high traffic volume, Chef Discount introduces its products into the stream of interstate commerce.

109.    KKF has been directly harmed in two ways by this advertisement. First, but for this unfair competition, Chef Discount would be required to participate in the KKF Program to benefit from KKF's name and reputation. Second, KKF's sales will suffer when its name becomes linked (at least in the local marketplace) with an inferior or

markedly different product than that with which previous KKF consumers were familiar.

## COUNT SIX
## TRADEMARK INFRINGEMENT
## LOUISIANA REVISED STATUTES § 51:222

110.   KKF incorporates by reference all allegations as though they were reproduced fully.

111.   Under the same facts alleged in Count Two, Chef Discount's actions amount to infringement of the Barn and Sun under Louisiana trademark law.

## COUNT SEVEN
## TRADEMARK DILUTION
## LOUISIANA REVISED STATUTES § 51:223.1

112.   KKF incorporates by reference all allegations as though they were reproduced fully.

113.   Under the same facts alleged in Count Four, Chef Discount's actions have caused dilution ("dilution by blurring") of KKF's brand, the Barn and Sun, and associated trade dress, and injury to KKF's business reputation ("dilution by tarnishment") under Louisiana trademark law.

## COUNT EIGHT
## UNJUST ENRICHMENT
## LOUISIANA CIVIL CODE ARTICLE 2298

114.   KKF incorporates by reference all allegations as though they were reproduced fully.

115.   Chef Discount's unauthorized advertising of KKF chicken and foods has allowed them to be enriched without cause, at the expense of KKF, its name, the Barn and Sun, and its trade dress. LA. CIV. CODE art. 2298.

## COUNT NINE
## INDIVIDUAL LIABILITY

116.   KKF incorporates by reference all allegations as though they were reproduced fully.

117. As the only principals of Chef Discount, the Amman defendants are presumed to have been in control of and aware of the advertising done there, and the decision to forego compliance with the KKF Program.

118. The Amman defendants should be held individually liable for the counterfeiting, infringement, and unfair competition at Chef Discount Market.

**COUNT TEN**
**SOLIDARY LIABILITY AMONG OWNERS**

119. KKF incorporates by reference all allegations as though they were reproduced fully.

120. The Amman defendants have taken a deliberate course of action. They have collectively ignored KKF's demands, warnings, and threats of legal action. Together, they have meaningfully violated federal and state counterfeiting, trademark, and unfair competition laws.

121. The Amman defendants should be required to account for KKF's damages *in solido* under Louisiana Civil Code Article 2324, which provides for solidary liability among joint conspirators of intentional torts.

**COUNT ELEVEN**
**LANDLORD/OWNER LIABILITY**

122. KKF incorporates by reference all allegations as though they were reproduced fully.

123. Although already individually responsible as a co-conspirator of an intentional tort against KKF, the owner/landlord (Ali Allan) of the property/building at 10833 Chef Menteur Highway may be held responsible because it knowingly permitted and/or actively participated in the allegations above.

## COUNT TWELVE
## PRELIMINARY AND PERMANENT INJUNCTIONS
## 15 U.S.C. § 1116
## (LANHAM ACT § 34)

124.  KKF incorporates by reference all allegations as though they were reproduced fully.

125.  Based on the reputational nature of the damages suffered as a direct and proximate result of Chef Discount's acts, KKF has been damaged, and unless Chef Discount is restrained and permanently enjoined by this Court, KKF will continue to suffer serious, irreparable injury, including a permanent loss of the goodwill associated with KKF, its chicken and food, and the Barn and Sun, all of which cannot be sufficiently or timely addressed by the grant of legal remedies.

## COUNT THIRTEEN
## DESTRUCTION OF INFRINGING ARTICLES
## 15 U.S.C. § 1118
## (LANHAM ACT § 36)

126.  KKF incorporates by reference all allegations as though they were reproduced fully.

127.  This Court may order Chef Discount to deliver up and destroy all KKF Program materials, all instances of the Barn and Sun, any associated trade dress, and all KKF Program food and related products.

## PRAYER FOR RELIEF

128.  **INJUNCTIVE RELIEF**: KKF prays that a preliminary and permanent injunction issue immediately and without bond enjoining Chef Discount from any use or display of KKF Program materials, including without limitation the Barn and Sun and all associated trade dress, all as contemplated by 15 U.S.C. §§ 1116(a) and 1125(c)(1), (5); and

22

129.  **INJUNCTIVE RELIEF**: KKF prays that the Court immediately order Chef Discount to deliver up and destroy all KKF Program materials, including but not limited to all instances of the Barn and Sun and any associated trade dress and all food and related products, as authorized by 15 U.S.C. § 1118; and

130.  After a trial on all issues raised by this *Complaint* save injunctive relief, KKF respectfully prays for the following relief, which the Lanham Act authorizes cumulatively:

131.  **LEGAL/EQUITABLE RELIEF FOR COUNTERFEITING:**

   a.  if KKF elects, mandatory statutory damages of up to $200,000 per mark, under 15 U.S.C. § 1117(c)(1); <u>or</u>

   b.  if KKF elects, mandatory statutory damages of up to $2,000,000 per Chef Discount's willful use of the mark, under 15 U.S.C. § 1117(c)(2); <u>or</u>

   c.  if KKF elects, a mandatory award of damages of up to treble KKF's damages or Chef Discount's profits, whichever is greater, under 15 U.S.C. § 1117(b)(1), for Chef Discount's intentional misuse of KKF's mark; and

   d.  reasonable attorney's fees; *Id.* and

   e.  prejudgment interest, under 15 U.S.C. § 1117(b).

132.  **LEGAL/EQUITABLE RELIEF FOR INFRINGEMENT OF KKF'S REGISTERED MARK OR TRADE DRESS, PASSING OFF, FALSE ADVERTISING, OR FALSE DESIGNATION OF ORIGIN:**

   a.  up to treble KKF's damages; and

   b.  a Court-supervised accounting and award to KKF of Chef Discount's profits during the offending period(s); and

   c.  costs of this action; and

   d.  attorney's fees, <u>all under 15 U.S.C. § 1117(a)</u>.

133.  all relief, whether legal, equitable, or customary, under Louisiana law, foregoing premises considered.

Respectfully submitted,

_____
Andrew T. Lilly (La. #32559)
715 Girod Street, Suite 200
New Orleans, Louisiana 70130
(t)      (504) 812-6388
(f)      (504) 539-4180
(e)      andrew@atlpllc.com

*Attorney for Krispy Krunchy Foods, L.L.C.*