UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

KRISPY KRUNCHY FOODS, L.L.C                        CIVIL ACTION

VERSUS                                             NO. 15-590

AMA DISCOUNT, INC., ET AL.                         SECTION "N" (2)

## ORDER AND REASONS

Presently before the Court is Plaintiff's motion for partial summary judgment (Rec. Doc. 34). To the extent stated herein, **IT IS ORDERED** that the motion for partial summary judgment is **GRANTED**.

## BACKGROUND

In this action, Plaintiff Krispy Krunchy Foods, L.L.C. ("Plaintiff" or "KKF") seeks injunctive and monetary relief, under various provisions of both federal and state law, against Defendants AMA Discount, Inc., d/b/a Chef Discount Market, Ali M. Allan, and Mohammed Allen (collectively, "Defendants" or the "AMA parties") based on Defendants' alleged infringement of Plaintiff's trademark and trade dress in selling chicken at their "Chef Discount Market" convenience store. Plaintiffs also seeks judgment against Seneca, as AMA's commercial general liability insurer.

Plaintiff's instant motion asks the Court to render a summary adjudication relative only to the AMA parties' alleged *liability* for trademark infringement and trade dress infringement[1] between the dates of September 30, 2014 and March 9, 2015. The former date is seven days after

---

[1]     See Counts 2 and 3 of the Second Amended Complaint (Rec. Doc. 22), pp. 14-15.

1

the September 23, 2014 delivery date of Plaintiff's September 22, 2014 de-brand letter;[2] the latter

date is when an AMA principal transmitted photographs to Plaintiff's personnel reflecting that AMA

had de-branded the Chef Discount market.[3]

## LAW AND ANALYSIS

### I.  Summary Judgment Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment

shall be granted "if the movant shows  that there is no genuine dispute as to any material fact and

the movant  is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The materiality of

facts is determined by the substantive law's identification of which facts are critical and which facts

are irrelevant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.

Ed.2d 202 (1986).  A fact is material if it "might affect the outcome of the suit under the governing

law." *Id.*

If the dispositive issue is one on which the nonmoving party will bear the burden of

proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out

that the evidence in the record contains insufficient proof concerning an essential element of the

nonmoving party's claim.  *See* Fed. R. Civ. P. 56(c);  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325,

---

[2]      See Rec. Doc. 34-12.

[3]      Plaintiff's original memorandum submitted in support of its motion for partial
summary judgment sought such a ruling for the time period between September 23, 2014 (the
delivery date of the September 22, 2014 letter) and March 9, 2015. See Rec. Doc. 34-2, p. 24 of 25.
In its reply memorandum, however, Plaintiff prudently changed the earlier date to September 30,
2014, in recognition of the 7 days allowed by the September 22, 2014 letter to complete de-branding.
See Rec. Doc. 42, p. 14.  Although the reply memorandum also changed the end date of the period
from March 9, 2015 to May 9, 2015, the Court believes that modification to have been made in error,
given the March 9, 2015 date set forth on the email (transmitting photographs of Defendants' de-
branding efforts) that was sent to Plaintiff's personnel.  See Rec. Doc. 34-17, p. 1.

106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986);  *see also Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir. 1990). Once the moving party carries its burden pursuant to Rule 56(a), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S. Ct. 2553;  *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed.2d 538 (1986); *Auguster v. Vermillion Parish School Bd.,* 249 F.3d 400, 402 (5th Cir. 2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana,* 294 F.3d 755, 758 (5th Cir. 2002), and draws all reasonable inferences in favor of that party.  *Hunt v. Rapides Healthcare System, L.L.C.,* 277 F.3d 757, 764 (2001).  Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted).  The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."  *See id.* (emphasis in original) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment.  *See* Fed. R. Civ. P. 56(c)(3)("court need consider only the cited materials"); *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").  Thus, the nonmoving

3

party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little,* 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir. 2002).

## II.  Application of Legal Principles

Having carefully considered the parties' competing submissions, the remainder of the record in this matter, and applicable law, the Court finds Plaintiff's motion well-founded for essentially the reasons set forth in Plaintiff's original and reply memoranda (Rec. Docs. 34-2 and 42). In short, Plaintiff has met its burden under Rule 56 of the Federal Rules of Civil Procedure, whereas Defendants have not.

More particularly, in opposing Plaintiff's motion, Defendants advise the Court of the following:

> The majority of KKF's motion focuses on the law concerning likelihood of confusion between KKF's registered trademarks, and whether the marks used at Chef Discount's store were confusingly similar to KKF's marks. On this, there is actually no dispute. Defendants do not contest that KKF owns valid trademark rights to its trademarks or that Chef Discount used KKF's marks pursuant to an oral license agreement. More importantly, there is also no dispute that licensees cannot simply use a former licensor's trademarks in perpetuity following the proper termination of the license agreement.

Instead, defendants assert that they substantially complied with the terms of the oral agreement with KKF, and that, when negotiations to cure the perceived breach of the oral agreement collapsed, it timely removed KKF's materials. Put simply, defendants assert that the threshold issue that must first be addressed is whether defendants complied with the terms of the parties' oral license agreement when it removed KKF's branded materials one month and nine days after negotiations with KKF were terminated.[4]

* * *

Moreover, with respect to the lack of a reasonable opportunity to cure, Chef Discount is not in possession of any letters from KKF providing Chef Discount with a reasonable period in which to cure any alleged defects, nor did KKF attach same to its motion for summary judgment. (Exhibit 1, ¶ 9). Chef Discount is only aware of KKF sending notice of minor licensing infractions, such as not carrying enough napkins and failing to stock each shelf of its KKF display with a sufficient number of plates. (Exhibit 1, ¶ 8). The parties previously resolved these issues with KKF allowing Chef Discount several months' time in which to cure these defects. (Id.) Other than [] in the notice terminating the agreement, however, Chef Discount is not aware of any written notice concerning use of non-KKF chicken, as KKF now alleges was the reason for the license termination. (Exhibit 1, ¶ 9).[5]

* * *

Based on the foregoing, Chef Discount respectfully submits that KKF failed to properly terminate the license agreement insofar as it failed to provide Chef Discount with a reasonable opportunity to cure and only provided Chef Discount with a nominal grace period of seven days in which to fully accede to KKF's de-branding demands. Chef Discount further submits that it acted reasonably in first trying to negotiate with KKF in order to become compliant with KKF's demands, and when those discussions failed, in timely removing KKF's products and advertising materials from its store.[6]

Defendants' position, however, misses the mark.

---

[4]     See Defendants' Opposition (Rec. Doc. 36), p. 4.

[5]     *Id.,* at pp. 7-8.

[6]     *Id.*, at p. 13.

Plaintiff's submissions reflect transmittal of at least two letters, prior to the aforementioned September 22, 2014 de-branding letter,[7] that provided notice to Defendants of non-compliance with  Plaintiff's requirements regarding necessary use of its products, including its chicken, and required cure of the deficiency with seven days, not a number of months.[8]  Relatedly, Plaintiff's submission also includes email correspondence from Plaintiff's trainers to management personnel reporting the results of inspections of Defendants' store, as well as corresponding discussions and other steps taken by them to facilitate Defendants' becoming compliant with Plaintiff's undisputed requirements for use of its trademark and trade dress.[9]

On the other hand, in urging denial of Plaintiff's motion,  Defendants offer only the declaration of Defendant Mohammed Allan, an AMA principal, that, in many pertinent respects, is too conclusory to satisfy Rule 56's requirements.  This is particularly true relative to Defendant Allan's assertion that "the tone and substance of [] conversations [between himself and Plaintiff's

---

[7]        See Rec. Docs. 42-10, p. 4 of 6; Rec. Doc. 42-14.  Additionally, the September 22, 2014 letter, sent by certified mail, with record of acceptance, was proceeding by a September 16, 2014 version of this letter providing the same information but transmitted by non-certified means. See Rec. Doc. 42-18.  The September 22, 2014 letter was followed by November 25, 2014, December 23, 2014 (from Plaintiff's counsel), and January 22, 2015 (from Plaintiff's counsel) de-branding letters. See Rec. Doc. 34-13, 34-14, and 34-15.

[8]        Defendant Allan's declaration also contends: "Chef Discount did not sign the 'Operator Letter of Understanding' that KKF attached to its motion. (Rec. Doc. 34-7).  Additionally, Chef Discount has no record or knowledge of receiving the 'Operator Letter of Understanding' from KKF."  See Rec. Doc. 36-1, ¶5.   A document purporting to be Plaintiff's "Operator Letter of Understanding," reflecting Allan's signature and name, as well as a copy of an AMA Discount Inc. check, signed by Allan, however, is attached to Plaintiff's reply memorandum.  See Rec. Doc. 42-5.

[9]        See Rec. Docs. 42-10, pp. 1-3 of 6 and pp. 5-6 of 6;  Rec. Docs. 42-13, 42-15, 42-16, and 42-17.  Declarations submitted by Dan Shapiro, Allison Shapiro, Troy Waguespack, and Andres Lebron likewise re-count these communications and rehabilitation efforts.  See Rec. Docs. 34-3, 34-4, 34-5, 42-2, 42-3, and 42-4.

field representative on January 22, 2015] were not that Chef Discount had been de-branded, but rather what changes Chef Discount needed to make.  Based on these discussions,  I was led to believe that Chef Discount could continue its business with KKF if it were to make changes to its operation."[10]  Significantly, Defendant Allan offers not a single fact from which a reasonable inference supportive of this conclusory assertion could be drawn.

Furthermore, Defendants' submission offers neither argument nor evidence suggesting the actual existence of triable and disputed  issues relative to whether AMA remained compliant with Plaintiff's requirements during the course of the parties' relationship, or actually cured the deficiencies reflected in Plaintiff's 2014 correspondence. To the contrary, Defendants do not specifically dispute the instances of  non-compliance alleged by Plaintiff.

Finally, though Defendants complain the seven-day period allowed to cure operational deficiencies, and then de-branding, was insufficient, they offer nothing to actually support this conclusory assertion.  As asserted by Plaintiff, the majority of Defendants' operational deficiencies seemingly could have be cured by simply placing an order for Plaintiff's products with Sysco, Plaintiff's authorized distributor, and/or removing non-compliant food items from their sale inventory.  With respect to de-branding, Defendants, on March 9, 2015, transmitted (by email) photographs to Plaintiff's personnel that evidenced the de-branding of the Chef Discount Market. The declaration provided by Chris Yount, Plaintiff's investigator, however, attests that when he went to the Chef Discount Market to serve Plaintiff's complaint only *five* days earlier, on March 4, 2015, the chicken sales he previously had observed (and photographed) on February 24, 2015, were still

---

[10]     See Rec. Doc. 36-1 at ¶12.

taking place using Plaintiff's marketing materials and logos.[11]  Based on this information, the seven-day de-branding period appears to have been sufficient.  Likewise, relative to de-branding, though Defendants maintain that Plaintiff must allow operators a reasonable time within which to divest itself of authorized products, Defendants do not assert that they actually had such items in stock at the pertinent time(s) or that this divestiture could not be accomplished within the seven-day period allowed for de-branding.

Given the foregoing, the Court finds no triable issue of fact to exists relative to Defendants' alleged trademark and trade dress infringement liability between September 30, 2014, and March 9, 2015.  Accordingly, the Court grants Plaintiff's motion for partial summary judgment to the extent stated herein.

New Orleans, Louisiana, this 13th day of January 2016.

**KURT D. ENGELHARDT**
**United States District Judge**

**Clerk to Copy:**
Magistrate Judge Wilkinson

---

[11]     See Rec. Doc. 34-6,  ¶¶ 5-10, and p. 3 of 5 - p. 5 of 5.

8